UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARK RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22cv587 (MSN/WEF) |
| | ) |
| <ivote.com>, *a domain name*, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment. (Dkt. 14.) No representative for Defendant responded to Plaintiff's Motion or appeared at the hearing on December 2, 2022, and the undersigned U.S. Magistrate Judge took Plaintiff's Motion for Default Judgment under advisement.[1]

I. INTRODUCTION

**A. Summary of Action and the Court's Recommendation**

On May 20, 2022, *pro se* Plaintiff Mark Rice ("Plaintiff") filed this lawsuit *in rem* against Internet domain name <ivote.com> ("Defendant Domain Name"). The Complaint alleges that Plaintiff is the owner of the trademark "iVote" (the "Mark") and "has built his image and digital platforms on the foundation of websites, digital interactive tools, and accessories with the

---

1. The record before the Court includes the Verified Complaint (Dkt. 1) ("Compl."); Declaration in Support of Plaintiff's Motion for Entry of Default (Dkt. 11.) ("Pl.'s Sept. 28 Decl."); Plaintiff's Motion for Default Judgment (Dkt. 14) ("Mot. Default J."); Memorandum of Law in Support of Plaintiff's Motion for Default Judgment (Dkt. 15) ("Mem. Supp."); Affidavit in Support of Plaintiff's Motion for Default Judgment ("Pl.'s Nov. 3 Decl.") (Dkt. 16); and all attachments and exhibits submitted with those filings.

1

'iVOTE®' theme." (Compl. ¶ 18.) Plaintiff further alleges that Defendant Domain Name is an anonymously registered domain that "began trading off of" the registered "iVote" mark after Plaintiff had registered the trademark, which "resulted in confusion" in the marketplace. *Id.* ¶ 25. Plaintiff therefore sued Defendant Domain Name alleging violations under the Anti-Cybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 1125(d)(1)), violations under the Lanham Act (15 U.S.C. §§ 1125(a), 1125(c), 1114(1)), and "Federal Unfair Competition." *Id.* at Counts I–V. Plaintiff now seeks default judgment against Defendant Domain Name for these alleged violations, with remedies to include transfer of the domain name to Plaintiff, an award of all profits realized by use of the domain name, compensatory damages, treble damages, injunction barring Defendant Domain Name's further use of the trademark, and costs. (Mem. Supp. at 14–15.)

For the reasons stated herein, the undersigned will recommend the Court grant default judgment as to Plaintiff's cybersquatting claim, finding Plaintiff's rights in the Mark have been violated through registration and use of the Defendant Domain Name with a bad faith intent to profit, and therefore order transfer of the Defendant Domain Name to Plaintiff. The undersigned will recommend the Court deny default judgment without prejudice as to Plaintiff's remaining Lanham Act claims, because transfer of the domain name, already granted with respect to the cybersquatting violation, is Plaintiff's only available remedy in this *in rem* action, rendering the Lanham Act claims moot. Finally, the undersigned will recommend the Court deny default judgment as to Plaintiff's "federal unfair competition" claim, because Plaintiff has failed to state a claim for relief.

### B. Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party and

venue must be proper before the court can render a default judgment. Plaintiff brings this cause of action pursuant to the ACPA (15 U.S.C. § 1125(d)) and the Lanham Act (15 U.S.C. § 1051 *et seq*.) and alleges that this Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338. (Compl. ¶¶ 5–6.)

Plaintiff alleges that this Court has *in rem* jurisdiction over Defendant Domain Name, pursuant to 15 U.S.C. § 1125(d)(2)(A). (Compl. ¶ 5.) Section 1125(d)(2)(A) permits the owner of a mark to bring an *in rem* action against an infringing domain name, if the owner of the mark is not able to obtain *in personam* jurisdiction over a person liable for the infringement or is unable to find a person liable for the infringement. First, as discussed in greater detail below with respect to Plaintiff's service of process, Plaintiff has sufficiently alleged that he could not find a person liable for the alleged infringement, despite his due diligence. (*See* Compl. ¶¶ 4, 9.)

Pursuant to 15 U.S.C. § 1125(d)(2)(C), for an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. Here, Plaintiff asserts that the principal place of business of the registry, Verisign, Inc., is located in this district.[2] (Compl. ¶¶ 7, 10.)

Given the uncontested allegations that the registry for Defendant Domain Name is located in Virginia, in this district, and that the identity and location of the registrant cannot be determined, the undersigned finds that the Court has subject matter jurisdiction over this action, the Court has *in rem* jurisdiction over Defendant Domain Name, and that venue is proper in this Court.

---

[2] Although the Complaint simply alleges Verisign, Inc. is located in Virginia and within this district but fails to allege the precise address of Verisign, Inc., publicly-available information demonstrates that the company is located within this district, at 12061 Bluemont Way, Reston, VA 20190. *See* https://www.verisign.com/en_US/company-information/contact-us/index.xhtml.

### C. Service of Process

Rule 4(n)(1) provides that the court may assert service over property if authorized by a federal statute and notice to claimants of the property is given as provided in the statute or by serving a summons under this rule.  A plaintiff filing an *in rem* action under ACPA must attempt to identify an individual defendant by sending notice of the alleged violation and intent to bring the action to the registrant of the domain name at the postal and email addresses provided to the domain name registrar and publishing notice of the action as directed by the court.  15 U.S.C. § 1125(d)(2)(A)(ii)(II).  If unsuccessful, not only is the *in rem* action permitted, these efforts by the plaintiff constitute service of process for the *in rem* action.  *Id.* § 1125(d)(2)(B).

Plaintiff conducted its due diligence and served process under the ACPA by searching WHOIS for the registrant of Defendant Domain Name.[3]  (Compl. ¶ 4.)  The WHOIS search revealed Defendant Domain Name was registered anonymously to "iVote" and the search did not yield a postal or email address for the registrant.  (Compl. at Exh. 1.)  Plaintiff also searched for the domain through the website of the registrar, GoDaddy, Inc. ("GoDaddy"), but the registrant's identity was anonymous.  (Compl. ¶ 4.)  Plaintiff attempted to contact the registrant via the "contact resources" provided by GoDaddy, including with each attempt a notice of the lawsuit, but no registrant ever responded to three separate contact attempts.  (Compl. ¶ 9.)  Finally, Plaintiff alleges that a company, Poli-Tech Solutions, LLC, "used the domain name" and purposefully registered it anonymously, but that after attempts to notify "possible defendant Poli-Tech … no defendant has appeared."  (Compl. ¶ 4.)  Therefore, the undersigned finds that Plaintiff conducted due diligence, could not find an individual defendant, and attempted in good faith to send notice of the

---

[3] WHOIS is a "database consisting of, inter alia, a [domain] registrant's name and address." (Compl. ¶ 4.)  In other words, it is an Internet domain "registry database." *Alfieri-Crispin v. Li Ting*, No. 1:15cv608 (AJT/MSN), 2015 WL 5560000, at *3 (E.D. Va. Sept. 11, 2005).

4

alleged violation to the registrant.

After Plaintiff moved for leave to perform alternative service under the ACPA, on June 10, 2022, the Court granted Plaintiff's motion and permitted service by publication. (Dkt. 4.) On September 30, 2022, Plaintiff filed an affidavit of publication, demonstrating that Plaintiff had complied with the Court's order by publishing notice of this action in the *Washington Times* in six consecutive weeks, from August 22, 2022 through September 26, 2022. (Dkt. 11-2.) Based on the foregoing, the undersigned finds that service of process has been accomplished as set forth in 15 U.S.C. § 1125(d)(2)(A)(ii), (B).

### D. Grounds for Default Judgment

To date, no party with an interest in Defendant Domain Name has appeared or otherwise participated in these proceedings. As noted above, Plaintiff properly published notice of this case, which stated that "any answer or other response to the Complaint should be filed with the Clerk of Court … within 20 days from the final date of publication of this Order," and noting that the Court "may render judgment" against the defendant if no appearance or pleading is filed. (Dkt. 11-2.) The final publication of this notice occurred on September 26, 2022. *Id.* No party appeared or responded on behalf of Defendant Domain Name by October 20, 2022.

As a result, on October 26, 2022, the Court granted Plaintiff's motion, which was construed as a motion for entry of default, and on October 27, 2022, the Clerk of the Court issued the Entry of Default. (Dkts. 12, 13.) Plaintiff filed his Motion for Default Judgment on November 7, 2022. (Dkt. 14.) The undersigned U.S. Magistrate Judge then held a hearing on Plaintiff's Motion for Default Judgment on December 2, 2022, at which no representative for Defendant Domain Name appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

5

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff Mark Rice has been using the term "iVote" in his "production of digital platforms and accessories" since 2007. (Compl. ¶ 14.) Plaintiff's "educational and political" platforms developed to-date include <www.iPresidentoftheUnitedStates.com>, <www.iPresident.com>, <www.iRepresentatives.com>, and <www.iPresidentivote.com>. (Compl. ¶ 15.) Plaintiff has used "iVote" as a "theme" in these platforms. (Compl. ¶¶ 13–14.) In 2014, Plaintiff filed an application with the United States Patent and Trademark Office ("USPTO") for the mark "iVote," for classification 041, which was granted in 2015. Plaintiff filed additional applications with the USPTO for the mark "iVote," for classifications 042, 009, and 025, all of which were granted. The most recent application was granted on July 23, 2019. (Compl. ¶ 16.) The trademark is displayed on Plaintiff's "digital platforms and accessories" and is accompanied by the registered trademark symbol. (Compl. ¶ 17.) The "iVote" mark is "distinctive" and "signif[ies] Plaintiff's … reputation … particularly in the educational and political marketplace." *Id.*

On or about early 2021, a registrant began using Defendant Domain Name, <ivote.com>, without Plaintiff's authorization. (Compl. ¶ 25.) The allegedly infringing website, a screenshot of which was attached to the Complaint, purports to offer "Cutting Edge Election Technology [that] Locates Ballots Cast But Not Counted In Georgia." (Compl. at Exh. 4.)

On November 13, 2021, an individual contacted Plaintiff via text message "to sell the domain ivote.com [to Plaintiff] for $2K for a general release of the current litigation." (Pl.'s Nov. 3 Decl. at 3; *see also* Compl. at Exh. 2.) It is Plaintiff's belief that this individual was associated with Poli-Tech Solutions, LLC. (Compl. at Exh. 2.) Plaintiff attempted to serve Poli-Tech

Solutions, LLC in a prior litigation[4] and attempted to "notify" the company with regard to the instant lawsuit, but neither the company nor any representative has appeared. (Compl. ¶ 4, Exh. 2.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's claims against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Complaint alleges fives causes of action: (1) Cybersquatting, under the Anticybersquatting Consumer Protection Act (15 U.S.C. 1125(d)); (2) Federal Trademark Infringement, under the Lanham Act (15 U.S.C. 1114(1)); (3) False Designation, under the Lanham Act (15 U.S.C. 1125(a)); (4) Dilution, under the Lanham Act (15 U.S.C. 1125(c)); and (5) Federal Unfair Competition, in violation of "rights at common law." Each cause of action is addressed herein.

#### A. Cybersquatting

First, Plaintiff has brought a cause of action for cybersquatting, in violation of the ACPA.

---

[4] Plaintiff brought a prior action relating to the Defendant Domain Name in the United States District Court for the Eastern District of Wisconsin, case no. 21-CV-1174-JPS. Due to Plaintiff's inability to locate a defendant, that court recommended Plaintiff bring suit pursuant to the ACPA in a district where a relevant domain authority is located, and the instant action ensued. (Compl. at Exh. 2.)

(Compl. at Count V.) The ACPA allows the owner of a mark to file an *in rem* action against a domain name if the domain name violates "any right of the owner of a mark." *See* 15 U.S.C. § 1125(d)(2)(A). This encompasses rights against cybersquatting provided for under § 1125(d)(1). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). Therefore, the owner of a mark can be entitled to *in rem* relief upon proving a violation of § 1125(d)(1).

Section 1125(d)(1) creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A). Thus, to sufficiently plead an ACPA cause of action, a plaintiff must allege: (1) the plaintiff's ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad faith intent to profit from the mark. *See id.*

### *1. Plaintiff Possesses a Valid and Protectable Mark*

The undersigned finds that Plaintiff has sufficiently demonstrated protectable rights in the Mark. The ACPA protects both registered marks as well as unregistered common law marks. *See* 15 U.S.C. § 1125(a), (d)(2)(A)(i); *B & J Enters., Ltd. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009). Plaintiff has registered the Mark with the USPTO. (*See* Compl. ¶ 16.) Therefore, Plaintiff is entitled to enforce the provisions of Section 1125(d) against any domain name that violates its rights in the protected Mark.

### *2. Domain Name is Confusingly Similar or Identical to Distinctive Mark*

The undersigned finds that Plaintiff has sufficiently demonstrated that Defendant Domain Name is confusingly similar or identical to Plaintiff's Mark, and that the Mark is distinctive, as required under the statute. 15 U.S.C. § 1125(d)(1)(A)(ii); *see also People for Ethical Treatment*

8

*of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).  As an initial matter, Plaintiff's Mark is distinctive.  Trademarks may be considered "fanciful," "arbitrary," or "suggestive," which are all inherently "distinctive." *Venetian Casino Resort v. Venetiangold.Com*, 380 F.Supp.2d 737, 742 (E.D. Va. July 28, 2005) (citing *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996)).  They may also be considered merely "descriptive," which is not inherently distinctive, but is distinctive if the mark acquires "secondary meaning," *i.e.*, "if in fact a substantial number of present or prospective customers understand the designation" to refer to a particular business enterprise.  *Id.* (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)).  Registration of a trademark with the USPTO serves as *prima facie* evidence that the Mark has acquired distinctiveness.  *See Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001).  Such registered marks therefore "begin[] with the presumption that [they], at a minimum, are 'descriptive and have secondary meaning.'" *Venetian Casino Resort*, 380 F.Supp.2d at 742.

Here, Plaintiff registered the Mark with the USPTO.  (Compl. ¶ 16.)  Therefore, the undersigned presumes the Mark is, at the very least, descriptive and has obtained secondary meaning.  *See Venetian Casino Resort*, 380 F.Supp.2d at 742.  Indeed, Plaintiff alleges he has conducted business using the Mark since 2007, including its use as part of his multiple online platforms, and that the Mark signifies his reputation in the market.  (Compl. ¶¶ 14, 17.)  These allegations serve to bolster the presumption that the Mark has obtained secondary meaning.  No facts rebutting the presumption have been submitted.  Therefore, the undersigned finds that the Mark is distinctive.

The confusing similarity standard is satisfied where a domain name is similar to a protected mark such that a "reasonable consumer 'might think they were used, approved, or permitted by [the plaintiff].'" *Venetian Casino Resort*, 380 F. Supp. 2d at 743 (quoting *Harrods, Ltd.*, 157

F.Supp.2d 658, 677 (E.D. Va. June 27, 2001), *rev'd on other grounds by* 302 F.3d 214 (4th Cir. 2002)). Stated differently, a confusingly similar domain and mark are "so similar in sight, sound and meaning that they could be confused." *Id.* (internal quotations and citation omitted).

Here, Plaintiff's Mark, "iVote" is entirely encompassed and duplicated in Defendant Domain Name, <ivote.com>. Therefore, Plaintiff has alleged sufficient facts to satisfy this requirement of the ACPA. *See Agri-Supply Company, Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 663 (E.D. Va. Sept. 13, 2006) (holding the domain name was confusing similar because it was "virtually identical" to plaintiff's trademark).

### *3. Registrant Has Acted with a Bad Faith Intent*

Finally, the undersigned finds that Plaintiff has demonstrated registrant's bad faith intent to profit from Plaintiff's Mark. Under the ACPA, bad faith intent may be considered by weighing nine factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i). The factors are given to courts as a guide and need not be exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319–20 (4th Cir. 2005). Indeed, "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

Nonetheless, the undersigned finds that factors (VI), (VII), and (IX) support Plaintiff's allegation of a bad faith intent to profit from use of the Mark. First, as addressed above, the Mark is distinctive, yet it has been duplicated and incorporated into Defendant Domain Name. Furthermore, Defendant Domain Name was registered anonymously. (*See* Compl. ¶ 4.) Plaintiff has demonstrated the "hidden" nature of the registrant, which did not provide a valid business, name, address, or other contact information when registering Defendant Domain Name, as well as the registrant's refusal to respond to notices of the lawsuit sent via the registrar. (*See* Compl. ¶¶ 4, 9.) Finally, Plaintiff alleges that a person purportedly in control of the domain name attempted to sell Defendant Domain Name to Plaintiff via text message in exchange for release of claims. (*See* Compl. at Exh. 2; Pl.'s Nov. 3 Decl. at 3.) The undersigned balances these factors against the

allegation that Defendant Domain Name did, at least temporarily, host a website that appears to be unrelated to Plaintiff's business. (*See* Compl. at Exh. 4.) However, considering all factors with respect to the allegations at hand, Plaintiff has sufficiently pleaded a "bad faith intent to profit" from Plaintiff's Mark. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d at 268 (noting the bad faith analysis depends upon "unique circumstances" of each case).

### *4. Conclusion*

Because the remaining procedural provisions of 15 U.S.C. § 1125(d) have been satisfied, the undersigned finds that default judgment for violation of the ACPA should be awarded. The Court may therefore, in this *in rem* action, order the transfer of Defendant Domain Name to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

### B. Other Lanham Act Violations

In addition to the ACPA claim, Plaintiff also alleges violations of the Lanham Act, specifically trademark infringement in violation of 15 U.S.C. § 1114(1), false designation in violation of 15 U.S.C. § 1125(a), and trademark dilution in violation of 15 U.S.C. § 1125(c). (Compl. at Counts I, III, IV.) Plaintiff is able to bring such claims *in rem* against a domain name, pursuant to 15 U.S.C. § 1125(d)(2),[5] which permits an *in rem* action where a domain name violated "any right of the owner of a mark registered in the [USPTO], or protected under subsection (a) or (c)." *See also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) (holding that "the best interpretation of § 1125(d)(2) is that the in rem provision not only covers bad faith claims under § 1125(d)(1), but also covers infringement claims under § 1114 and

---

[5] The language of these provisions contemplates that such actions be brought against a "person," which the statute defines as either a natural person or a "firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." 15 U.S.C. § 1127. A domain name is not a person, nor does Plaintiff argue that it is. However, 15 U.S.C. § 1125(d)(2) permits *in rem* actions, pursuant to the limitations discussed herein.

§ 1125(a) and dilution claims under § 1125(c)").

However, the undersigned need not address these claims. Plaintiff's potential relief for *in rem* actions—under any of these Lanham Act claims—is limited to forfeiture, cancellation, or transfer of the domain name. *See* 15 U.S.C. § 1125(d)(2)(D). This relief will already be awarded for violation of the ACPA, under 15 U.S.C. § 1125(d)(1). *See supra* at Section I.A. Therefore, because there is no additional relief available to award for the other Lanham Act claims, as federal courts in this district and others have held, there is no need to resolve these other claims. *See Prudential Ins. Co. of Am. v. PRU.COM*, 546 F. Supp. 3d 476, 493 (E.D. Va. June 30, 2021) (dismissing as "moot" an additional trademark infringement claim in an *in rem* action, where the court had already found liability that warranted transfer of the defendant domain name) (citing *Morris v. Pompeo*, ––– F. Supp. 3d –––, –––, 2020 WL 6875208, at *9 (D. Nev. Nov. 23, 2020); *Everlast World's Boxing Headquarters Corp. v. Trident, Brands Inc.*, No. 19-cv-503, 2020 WL 917058, at *7 (S.D.N.Y. Feb. 26, 2020); *SEC v. Zenergy International, Inc.*, 430 F. Supp. 3d 384, 391 (N.D. Ill. Dec. 20, 2019)). Accordingly, the undersigned recommend denial of default judgment as to Counts I, III, and IV, without prejudice, as moot.

### C. Federal Unfair Competition

Finally, Plaintiff brings one cause of action for "Federal Unfair Competition." Plaintiff does not cite any statutory basis for his claim and cites only a "violation of Plaintiff's rights at common law." (Compl. ¶ 52.) There is no such federal common law, nor has Plaintiff pleaded the "strict conditions" required for a court to promulgate a federal rule of decision. *See Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 200–01 (4th Cir. 2022) (stating the "well-known principle" that "[t]here is no federal general common law" and setting forth two requirements, "uniquely federal interests" and a "significant conflict" between federal policy and

13

state law, for a federal court to displace state law through federal common law) (internal quotations and citations omitted).  Therefore, the undersigned finds Plaintiff has failed to allege a cause of action for federal unfair competition.

## IV. REQUESTED RELIEF

Plaintiff seeks transfer of the domain name to Plaintiff, an award of all profits realized by use of the domain name, compensatory damages, treble damages, injunction barring Defendant Domain Name's further use of the trademark, and costs. (Compl. at Prayer for Relief; Mem. Supp. at 14–15.)

Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." Indeed, § 1125(d)(2)(D) limits the remedy for any cause of action brought *in rem* to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  This court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks.  *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002).

Plaintiff, having established a violation of the ACPA in this *in rem* action, is entitled to its requested relief of transfer of Defendant Domain Name to Plaintiff, as permitted by 15 U.S.C. §§ 1125(d)(1)(C), (2)(D).

However, there is no basis for additional relief.  As noted, Plaintiff has brought this case *in rem*, and his relief for Counts I, III, IV, and V, under the ACPA and Lanham Act, is therefore limited by 15 U.S.C. § 1125(d)(2)(D) to transfer of the domain name.[6]  Monetary damages,

---

[6] As noted *infra* at Section III.B, because Plaintiff is limited to the award of transfer of the domain

additional injunctive relief, and costs are not permitted by the statute in an *in rem* action. Moreover, Plaintiff has not sufficiently pleaded Count II, claiming federal unfair competition, and no remedy shall be granted on that count.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends the Court (i) grant default judgment against Defendant Domain Name with respect to Count V, for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and therefore grant Plaintiff relief in the form of an order stating that the registration, ownership, and control of Defendant Domain Name, <ivote.com>, be transferred to and maintained with Plaintiff; (ii) deny default judgment as to Counts I, III, and IV, under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), without prejudice, as moot; and (iii) deny default judgment as to Count II, federal unfair competition, for failure to state a claim.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

_____
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

December 15, 2022
Alexandria, Virginia

---

name, not only for the ACPA claims but for the Lanham Act claims, and because the undersigned found liability under the ACPA, the Court may deny default judgment as to the Lanham Act claims, without prejudice, as moot. *See Prudential Ins. Co. of Am.*, 546 F. Supp. 3d at 493–94.